# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

KEVIN ALMY,

      Plaintiff

v.

MINOR ADAMS, et. al.,

      Defendants

Case No.: 3:16-cv-00231-MMD-WGC

**Report & Recommendation of**
**United States Magistrate Judge**

Re: ECF No. 113

      This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

      Before the court is Defendants Motion for Summary Judgment. (ECF Nos. 113, 113-1 to 113-15.) Plaintiff filed a response. (ECF No. 117.) Defendants filed a reply. (ECF Nos. 118, 118-1 to 118-5.)[1]

      After a thorough review, it is recommended that Defendants' motion be granted.

## I. BACKGROUND

      When Plaintiff filed his original, first, and second amended complaints, he was an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 1-1, First Am. Compl., ECF No. 18, Second Am. Compl., ECF Nos. 38, 38-1.) Before the court had the opportunity to screen the original complaint, Plaintiff filed a motion for leave to amend and proposed first amended

---

[1] Plaintiff moved to strike the reply. (ECF No. 119.) Defendants filed a response to that motion. (ECF Nos. 120, 120-1.) The court has issued a separate order denying the motion to strike.

complaint (FAC). (ECF Nos. 8, 9.) The court granted the motion and screened the FAC and

dismissed it in its entirety, but with leave to amend. (ECF No. 17.) Plaintiff filed a second

amended complaint (SAC) (ECF No. 38), which the court screened and allowed Plaintiff to

proceed with a denial of access to courts claim in Count I based on allegations that he was

transferred to different prisons/beds which inhibited his ability to communicate with witnesses

and litigate a prior case, 2:12-cv-00129-HDM-VCF. He was also allowed to proceed with a

retaliation claim in Count II based on allegations that prison officials constantly moved him to

different cells and prisons because he had filed hundreds of grievances and several lawsuits.

Count III was dismissed with leave to amend. (ECF No. 46.) Plaintiff was subsequently released

on parole. (ECF No. 52.)

Plaintiff then filed a motion to amend and submitted a proposed third amended complaint

(TAC). (ECF Nos. 57, 57-1.) The court screened the TAC, and confirmed Plaintiff was

proceeding with Counts I and II, as set forth in the screening order on the SAC, and additionally,

the court allowed Plaintiff to proceed with an Eighth Amendment conditions of confinement

claim in Count III of the TAC, based on allegations that during his frequent transfers, Defendants

engaged in the prolonged use of belly chains that made him unable to "evacuate his bowels," and

caused him excruciating pain. (ECF No. 62.)

The events giving rise to this action took place while Plaintiff was housed at Lovelock

Correctional Center (LCC), Warm Springs Correctional Center (WSCC), Northern Nevada

Correctional Center (NNCC), Ely State Prison (ESP), and Southern Desert Correctional Center

(SDCC). (*Id.*) Plaintiff names the following defendants in Counts I, II, and III: Isidro Baca,

Robert Bannister, Dwayne Baze, John Buchanan, Quentin Byrne, Christine Carmazzi, Tara

Carpenter, Celia Chacon, Joshua Clark, John Cosman, James Cox, William Donnelly, Frank

Dressen, Jennifer Dutton, Ellie Emmanuel, Eric Fancher, Sheryl Foster, Gabriela Garcia, Karen

Gedney, Edward Gibson, Peter Gibson, Brandt Halling, Ronald Hannah, Donald Helling, Brian

Henley, Tanya Hill, Ira Hollingsworth, Silvia Irvin, James Keener, Dillyn Keith, Michael

Kwansa, Robert LeGrand, Terry Lindberg, Wesley Mattice, Karly McCormick, Kimberly

McCoy, Veronica Meza, Roger Mooney, Shannon Moyle, Debbie Noel, Peterson, Donald Poag,

Lynn Rensman, Julie Rexwinkel, Oswald Reyes, Ronald Shreckengost, Howard Skolnik, Holly

Skulstad, Greg Smith, Steve Suwe, Ted Tackett, Chandra Thomas, Michael Thomas, Tonya

Thomas (also known as Tonya Moore) , Debra Gregoire (formerly known as Debra Todd), Roger

Tobar, Ruben Vidaurri, Lisa Walsh, Brian Ward, Marie Ward, Adam Watson, Whiteman, Brian

Williams and Gregory Yates.

The Attorney General's Office ultimately accepted service/representation for the

following defendants: Isidro Baca, Robert Bannister, Dwayne Baze, John Buchanan, Quentin

Byrne, Tara Carpenter, Celia Chacon, John Cosman, James Cox, Frank Dressen, Jennifer Dutton,

Eric Fancher, Karen Gedney, Edward Gibson, Peter Gibson, Brandt Halling, Ronald Hannah,

Donald Helling, Brian Henley, Ira Hollingsworth, Silvia Irvin, Dillyn Keith, Michael Kwansa,

Robert LeGrand, Terry Lindberg, Karly McCormick, Kimberly McCoy, Veronica Meza, Roger

Mooney, Shannon Moyle, Debbie Noel, Donald Poag, Oswald Reyes, Ronald Shreckengost,

Holly Skulstad, Steve Suwe, Ted Tackett, Debra Gregoire (formerly known as Debra Todd),

Roger Tobar, Ruben Vidaurri, Lisa Walsh, Brian Ward, Marie Ward, Adam Watson, and Brian

Williams.

The following defendants were dismissed without prejudice for Plaintiff's failure to

timely serve them under Federal Rule of Civil Procedure 4(m): Christine Carmazzi, Joshua

Clark, William Donnelly, Ellie Emmanuel, Sheryl Foster, Gabriela Garcia, Tanya Hill, Wesley

1  Mattice, Peterson, Lynn Rensmon, Julie Rexwinkel, Howard Skolnik, Greg Smith, Chandra
2  Thomas, Michael Thomas, Tonya Thomas (also known as Tonya Moore), and Whiteman.

3  There are two defendants that were served, but never entered an appearance, and Plaintiff
4  never filed any motion for entry of Clerk's default against them: James Keener (ECF No. 90) and
5  Gregory Yates (ECF No. 108).

6  The moving defendants make various arguments in support of their motion, including:
7  (1) Plaintiff's suit is barred by his previous settlement agreement in case 3:13-cv-000645-MMD-
8  VPC; (2) Plaintiff's lawsuit is barred by the two-year statute of limitations; (3) he cannot
9  otherwise maintain the claims asserted in this action; and (4) they are entitled to qualified
10  immunity.

11  **II. LEGAL STANDARD**

12  The legal standard governing this motion is well settled: a party is entitled to summary
13  judgment when "the movant shows that there is no genuine issue as to any material fact and the
14  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*
15  *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the
16  evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*
17  *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome
18  of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary
19  judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the
20  other hand, where reasonable minds could differ on the material facts at issue, summary
21  judgment is not appropriate. *Anderson*, 477 U.S. at 250.

22  "The purpose of summary judgment is to avoid unnecessary trials when there is no
23  dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

4

F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

1    If the moving party satisfies its initial burden, the burden shifts to the opposing party to

2    establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

3    *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

4    dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

5    be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

6    *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

7    (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

8    by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

9    U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

10   pleadings and set forth specific facts by producing competent evidence that shows a genuine

11   dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

12   ### III. DISCUSSION

13   **A. Does Plaintiff's Settlement in 3:13-cv-00645-MMD-VPC Bar this Action or Any Part of**

14   **this Action?**

15   The court will first address Defendants' argument that Plaintiff's settlement in 3:13-cv-

16   00645-MMD-VPC bars this action. This analysis involves the intersection of three of Plaintiff's

17   lawsuits: 2:12-cv-00129-RFB-VCF (the 129 case)[2]; 3:12-cv-00645-MMD-VPC (the 645 case);

18   and, 3:16-cv-231-MMD-WGC (referred to as the 231 case or, more frequently, as "this case").

19   The court will provide a summary of each of these cases, insofar as they are relevant to this case,

20   before proceeding with the substantive analysis.

21

22
23   [2] The 129 case was initially assigned to District Judge James C. Mahan, and was then re-assigned to District Judge Howard D. McKibben, and most recently to District Judge Richard F. Boulware. (2:12-cv-00129-RFB-VCF, ECF Nos. 304, 536.) Magistrate Judge Ferenbach has been the assigned magistrate judge for the duration of the case.

### 1. 2:12-cv-00129-RFB-VCF (the 129 case)

In the 129 case, Plaintiff was allowed to proceed with the following claims: Eighth Amendment excessive force and failure to protect claims related to incidents that occurred on May 26, 2010, January 4, 2011, and July 28, 2011; a First Amendment confiscation of incoming mail claim; an Eighth Amendment conditions of confinement claim; a due process claim; and, a retaliation claim. (2:12-cv-00129-RFB-VCF, ECF No. 9.)

On September 19, 2012, Plaintiff filed a motion for a preliminary injunction, where he sought an order compelling the defendants in the 129 case to allow him to have confidential correspondence with the material inmate witnesses to develop, corroborate and prove his claims. In that motion, Plaintiff asserted that: he was injured by excessive force on May 26, 2010; he exhausted his grievance on that claim on September 13, 2010; on October 25, 2010, he submitted his complaint regarding that claim to the law library for copying; on October 28, 2010, LCC authorities transferred him to WSCC; on December 12, 2010, he asked for a waiver so he could correspond with inmate witnesses; his requests were denied or ignored; he initially filed a complaint on May 10, 2011; he filed an "expanded" action on January 1, 2012[3]; on April 4, 2012, he filed an amended complaint; he was subsequently transferred to SDCC; these transfers affected his ability to prosecute the 129 case by impeding his ability to identify defendants, to identify prospective witnesses, and develop known witnesses; and, NDOC refused to waive Administrative Regulation (AR) 750's prohibition on inmates communicating with inmates at another facility. (2:12-cv-00129-RFB-VCF, ECF No. 21.)

---

[3] The 129 case complaint was received and docketed by the Clerk's Office on January 14, 2012. (2:12-cv-00129-RFB-VCF, ECF No. 1-1.)

The defendants responded, arguing, among other things, that AR 750.04 sets forth a process for allowing an inmate to request to correspond with another inmate, that included completion of a form, that Plaintiff had not yet done properly. (2:12-cv-00129-RFB-VCF, ECF No. 23.)

District Judge Mahan denied the motion, finding that Plaintiff failed to demonstrate he was likely to suffer irreparable harm in the absence of injunctive relief because there was a process that allowed inmates to correspond with one another, and Plaintiff had yet to comply with that process. (2:12-cv-00129-RFB-VCF, ECF No. 51.) Plaintiff subsequently filed a motion for sanctions where he argued that he had complied with the procedures to communicate with other inmates. (2:12-cv-00129-RFB-VCF, ECF No. 54.)

The defendants in the 129 case filed a partial motion to dismiss, arguing that Plaintiff failed to exhaust his administrative remedies with respect to Counts VII, XIV, and XV (they made no argument as to the other claims). (2:12-cv-00129-RFB-VCF, ECF No. 27.) Magistrate Judge Ferenbach issued a report and recommendation that the partial motion to dismiss be granted. (2:12-cv-00129-RFB-VCF, ECF No. 159 at 3-5.) Judge Mahan adopted the report and recommendation. (2:12-cv-00129-RFB-VCF, ECF No. 194.)

On April 3, 2013, Plaintiff moved for leave to amend. (2:12-cv-00129-RFB-VCF, ECF Nos. 112, 112-1.) The proposed amended complaint alleged, among other things, that Plaintiff was transferred to WSCC on October 28, 2010, due to his grievances and litigation, which severed contact with his witnesses. In addition, he alleged that he was subject to additional retaliatory transfers thereafter in a tactic referred to as "bussing," and as a result, he was subject to excessive strip searches and the use of full restraints for extended periods of time. (2:12-cv-00129-RFB-VCF, ECF No. 112-1 at 43, 47, 47, 53-54, 56, 65, 93.) Judge Ferenbach

1   recommended denial of this motion as the time to amend had expired. (2:12-cv-00129-RFB-

2   VCF, ECF No. 159 at 6-7.) Judge Mahan adopted the report and recommendation. (2:12-cv-

3   00129-RFB-VCF, ECF No. 194.)

4       On March 3, 2014, Plaintiff filed a motion requesting leave to file a motion for temporary

5   restraining order and preliminary injunction to enjoin defendants from the retaliatory transfer of

6   Plaintiff to SDCC, and from utilizing repeated transfers, bed moves and charges against him.[4] He

7   stated that his most recent transfer to SDCC was his 28th facility/bed move in 38 months. (2:12-

8   cv-00129-RFB-VCF, ECF No. 252.) Judge Ferenbach recommended denial of the motion for

9   leave because Plaintiff's request was unrelated to the claims proceeding in the action. (2:12-cv-

10  00129-RFB-VCF, ECF No. 278.) District Judge McKibben adopted the report and

11  recommendation. (2:12-cv-00129-RFB-VCF, ECF No. 309.)

12      Plaintiff filed various other motions regarding communication with inmate witnesses and

13  their participation at trial which were addressed by the court. (*See e.g.* 2:12-cv-00129-RFB-VCF,

14  ECF Nos. 277, 279, 292, 310, 313, 328, 340, 346, 351, 364, 371, 386, 391.)

15      The jury trial as to the remaining claims in the 129 case commenced on

16  December 8, 2014. (2:12-cv-00129-RFB-VCF, ECF No. 438.) It appears that Plaintiff called six

17  inmate witnesses during the course of the trial. (*Id.*) Ultimately, the jury found in favor of the

18  defendants and judgment was entered accordingly. (2:12-cv-00129-RFB-VCF, ECF No. 441-

19  461.)

20      Plaintiff filed a notice of appeal on December 31, 2014. (2:12-cv-00129-RFB-VCF, ECF

21  No. 464.) The Ninth Circuit issued its memorandum decision on March 2, 2018, affirming in

22

23  [4] He filed a *motion for leave* to file the motion because the court had ordered that he seek leave to file any further motions due to his repetitive and numerous filings with the court. (*See* 2:12-cv-00129-RFB-VCF, ECF No. 159 at 8-9.)

part, vacating in part, and remanding. (2:12-cv-00129-RFB-VCF, ECF No. 509.) The Ninth

Circuit declined to reach Plaintiff's contention that the defendants interfered with his ability to

prosecute the action through prison transfers, and limiting his access to evidence, witnesses and

exhibits. The court acknowledged that prisoners have "a right under the First and Fourteenth

Amendments to litigate claims challenging their sentences or the conditions of their confinement

to conclusion without *active interference* by prison officials," but, Plaintiff had not presented that

claim in the district court. (*Id*. at 4, emphasis original, citing *Silva v. Di Vittorio*, 658 F.3d 1090,

1103 (9th Cir. 2011), *overruled on other grounds as stated in Richey v. Dahne*, 807 F.3d 1202,

1209 n. 6 (9th Cir. 2015)). The court found all of Plaintiff's arguments on appeal unavailing,

except that it vacated the dismissal of Counts VII and XIV (which had been dismissed on the

basis that Plaintiff had failed to exhaust administrative remedies). (*Id*. at 5-7.)

Magistrate Judge Ferenbach held a pretrial conference regarding the vacated and

remanded claims on September 26, 2018, and ordered the case stayed for six months, setting a

status conference for March 26, 2019. (2:12-cv-00129-RFB-VCF, ECF No. 524.) At the

March 26, 2019 status conference, the stay was lifted and scheduling order deadlines were set for

the remaining claims. (2:12-cv-00129-RFB-VCF, ECF No. 526.) The discovery cutoff deadline

is December 20, 2019, and the dispositive motion deadline is January 21, 2020, and as such the

129 case is ongoing as to Counts VII and XIV. (2:12-cv-00129-RFB-VCF, ECF No. 538.)

**2. 3:13-cv-00645-MMD-VPC (the 645 case)**

Plaintiff filed the 645 case on November 20, 2013. (3:13-cv-00645-MMD-VPC, ECF No.

1-1.) On January 29, 2014, he filed a motion for temporary restraining order and preliminary

injunction, where he sought an order prohibiting the defendants from transferring him to other

prisons as a means of retaliation for exercising his right to seek redress of grievances. (3:13-cv-00645-MMD-VPC, ECF Nos. 3,4.)

On February 7, 2014, the court issued an order screening the complaint and found Plaintiff stated claims, including retaliation claims against various defendants related to his allegations that the defendants had transferred him to different beds and facilities for filing grievances and lawsuits. Specifically, he had alleged: he was retaliated against in August of 2011 when he was transferred from WSCC to NNCC; he was retaliated against again when he was placed in solitary confinement segregation from July 28, 2011 to September 14, 2011; from April 5, 2012 to September 22, 2012, they retaliated against him for filing grievances and lawsuits by transferring him to SDCC; he had been transferred to 7 facilities and had 24 bed moves in retaliation for his actions. (3:13-cv-00645-MMD-VPC, ECF No. 9 at 4-6.) He was allowed to proceed with other claims against additional defendants, but those claims are not relevant to this action.

The court denied the motion for temporary restraining order and preliminary injunction, concluding it was unlikely Plaintiff was likely to succeed on the merits of his retaliation claim because declarations submitted by defendants demonstrated that he was transferred for legitimate penological reasons and not to retaliate against Plaintiff. (3:13-cv-00645-MMD-VPC, ECF No. 11.) Plaintiff sought reconsideration of the order, and that was denied. (3:13-cv-00645-MMD-VPC, ECF No. 22.)

The defendants filed a motion for summary judgment on September 18, 2015. (3:13-cv-00645-MMD-VPC, ECF No. 156.) Magistrate Judge Cooke issued a report and recommendation on May 23, 2016, that the motion be granted in part and denied in part. (3:13-cv-00645-MMD-VPC, ECF No. 203.) On September 27, 2016, District Judge Du entered an order adopting and

1   accepting the report and recommendation, and referred the case to Judge Cooke for a settlement

2   conference. (3:13-cv-00645-MMD-VPC, ECF Nos. 222, 223.)

3        The parties apparently reached a settlement among themselves before a settlement

4   conference was set before Judge Cooke, and on October 17, 2016, the parties filed a stipulation

5   for dismissal of the action with prejudice. (3:13-cv-00645-MMD-VPC, ECF No. 225.) Judge Du

6   entered an order dismissing the case based on the stipulation the following day. (3:13-cv-00645-

7   MMD-VPC, ECF No. 226.)

8        **3. 3:16-cv-00231-MMD-WGC (this case)**

9        In this case, Plaintiff alleges that he previously brought a section 1983 complaint against

10  various NDOC officials (the 129 case) alleging excessive force against him in an incident

11  occurring on May 26, 2010. He contends that starting on October 28, 2010, prison officials

12  began employing a tactic that caused Plaintiff to be transferred and moved 45 times. (ECF No.

13  57-1 at 23.) He was allowed to proceed with three claims in Counts I, II and III, which are all

14  predicated on these transfers and moves.

15       In Count I, Plaintiff was allowed to proceed with an access to courts claim based on

16  allegations that Defendants subjected Plaintiff to these transfers and bed moves to obstruct his

17  access to witnesses, evidence and services essential to fairly litigate the 129 case. Once he was

18  transferred, he claims the Defendants cited Administrative Regulation (AR) 750 to prohibit

19  correspondence between Plaintiff and any inmate witnesses. He asked Defendants to waive this

20  prohibition, but claims his requests were improperly ignored, delayed or denied. Plaintiff alleges

21  that this rendered all aspects of his trial in the 129 case unfair. He states that while years later the

22  court ordered NDOC to permit him this correspondence, it was too close to trial, witnesses

23  became unattainable, or did not remember crucial facts. (ECF No. 57-1 at 24-25.)

12

In Count II, Plaintiff was allowed to proceed with a retaliation claim based on the allegation that on October 28, 2010, Defendants initiated an unlawful six-year retaliatory tactic referred to as "diesel therapy" or "bussing" by transferring him in order to punish him or get him to abandon his First Amendment rights. He avers that he was a known grievance filer and litigator. (ECF No. 57-1 at 26.)

In Count III, Plaintiff was permitted to proceed with an Eighth Amendment conditions of confinement claim based on allegations that he was forced to take part in 45 transfers/bed moves, and during every move he was forced to wear full restraints, which included belly chains, wrist and leg shackles, for eight to twelve hours consecutively, and multiple times on consecutive days. He alleges that this prevented him from being able to evacuate his bowels because the chains are laced through the belt loops and pulled tight. As a result, he avers that he suffered in excruciating pain. (ECF No. 57-1 at 27.)

Plaintiff's exhibit A1 to the TAC chronicles the alleged moves. They moves were between LCC, WSCC, NNCC, SDCC, ESP, and occurred between October 28, 2010, and October 3, 2016. (ECF No. 57-1 at 32-33.)

**4. Preclusive Effect of the Settlement and Dismissal with Prejudice by Stipulation in the 645 Case**

Defendants argue that the claims proceeding in this case are barred by the settlement agreement in the 645 case and res judicata. Therefore, the court must consider whether the settlement in the 645 case released the claims asserted in this action.

**a. Legal Standard**

"By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' the related doctrines of claim and issue preclusion 'protect against the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 687 (9th Cir. 2019) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)) (internal quotation marks and additional citation omitted, alterations original from *Taylor*), *cert. denied* --- S.Ct. ---, 2019 WL 5875157 (Nov. 12, 2019).

"The terms 'claim preclusion' and 'issue preclusion' have replaced a more confusing lexicon. Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'" *Id.* at 687 n. 1 (quoting *Taylor*, 553 U.S. at 892 n. 5). "The term 'res judicata' refers 'collectively' to claim and issue preclusion." *Id.*

"Under the doctrine of claim preclusion, 'a final judgment on the merits' in a case precludes a successive action between 'identical parties or privites' concerning 'the same claim or cause of action.'" *Id.* at 689 (quoting *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005))."However, the claim preclusion 'inquiry is modified in cases where the earlier action was dismissed in accordance with a release or other settlement agreement.'" *Id.* at 689 (emphasis added) (quoting *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 913 (4th Cir. 2013)).

"A judgment entered 'based upon the parties' stipulation, unlike a judgment imposed at the end of an adversarial proceeding, receives its legitimate force from the fact that the parties consented to it.'" *Id.* (quoting *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288

14

(11th Cir. 2004)). "'A settlement can limit the scope of the preclusive effect of a dismissal with prejudice by its terms.'" *Id*. (quoting *U.S. ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 911 (9th Cir. 1998); *Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d 1227, 1231 (Fed. Cir. 2006); *May v. Parker-Abbott Transfer & Storage, Inc.*, 899 F.2d 1007, 1010 (10th Cir. 1990)).

"Two (or more) parties 'may negotiate a settlement of [a] dispute and … execute a release of all claims. The release acts as a simple contract between the two private parties[.]'" *Id.* at 690 (quoting *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1557 (3d Cir. 1994)). "But when a court dismisses an action because of a settlement, 'the settlement and release of claims … is stamped with the imprimatur of [a] court with jurisdiction over the parties and the subject matter of the lawsuit." *Id*. "The settlement and release become a 'final judgment' and 'not simply a contract entered into by … private parties…." *Id*. at 690-91. "The agreement determines the scope  of preclusion in [such an] action as a matter of preclusion law, not as a matter of contract." *Id*. at 691 (citing Wright, *Federal Practice and Procedure* § 4443).

Courts "look to the intent of the settling parties to determine the preclusive effect of a dismissal with prejudice entered in accordance with a settlement agreement, rather than to general principles of claim preclusion." *Id*. at 689-90 (citing *F.T.C. v. Garvey*, 383 F.3d 891, 898 n. 7 (9th Cir. 2004); *Norfolk S. Corp.*, 371 F.3d at 1289). "'The best evidence of [the parties'] intent is … the settlement agreement itself …, as interpreted according to traditional principles of contract law.'" *Id*. at 690 (alteration original) (quoting *Norfolk S. Corp..*, 371 F.3d at 1289; *Purdue Pharma*, 737 F.3d at 913 ("[G]iven the contractual nature of consent decrees and settlement agreements, the preclusive effect of a judgment based on such an agreement can be no greater than the preclusive effect of the agreement itself."); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366 (3d Cir. 2001)).

15

"Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999), *as amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000); *see also Norfolk S. Corp.*, 371 F.3d at 1290 (citing *Restatement (Second) of Contracts* ch. 9, introductory note (1981) ("Where the plain meaning of an agreement is clear, we may not go beyond the four corners of the document to look for additional evidence of the drafter's intentions.").

"'The construction and enforcement of settlement agreements are governed by principles of local law.'" *Jones v. McDaniel*, 717 F.3d 1062, 1067 (9th Cir. 2013) (quoting *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004)). "That is true, 'even where a federal cause of action is settled or released.'" *Id.* (quoting *Botefur v. City of Eagle Point*, 7 F.3d 152, 156 (9th Cir. 1993)). "Under Nevada law, 'a settlement agreement['s] construction and enforcement are governed by principles of contract law.'" *Id.* (citing *May v. Anderson*, 121 Nev. 668, 119 P.3d 1254, 1257 (2005)). Nevada law, like federal law, holds that when the language of the agreement is unambiguous, the court must not go beyond the agreement to construe it. *See In re Amerco Derivative Litigation*, 252 P.3d 681, 693, 127 Nev. 196, 211 (2011) (citing *Chwialkowski v. Sachs*, 834 P.2d 405, 406, 108 Nev. 404, 406 (1992)). When, however, the parties' intent "is not clearly expressed in the contractual language," the court may also "consider the circumstances surrounding the agreement." *Id.* (citing *Sheehan & Sheehan v. Nelson Malley & Co.*, 117 P.3d 219, 223-24, 121 Nev. 481, 487-88 (2005)). The Nevada Supreme Court has noted that "[t]ypically, '[c]ontractual release terms … do not apply to future causes of action unless expressly contracted for by the parties.'" *Id.* (quoting *Clark v. Columbia/HCA Info. Servs.*, 25 P.3d 215, 223-24, 117 Nev. 468, 480 (2001)). "A contract is ambiguous when it is subject to

16

more than one reasonable interpretation. Any ambiguity, moreover, should be construed against the drafter." *Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407, 123 Nev. 212 (2007).

Therefore, the court will now look to the settlement agreement in the 645 case to determine the preclusive intent of the parties, and apply it to this case.

### b. The Settlement Agreement

The settlement agreement in the 645 case was between Plaintiff and NDOC, "on behalf of itself and all of its officers, directors, employees, former-employees, agents, predecessors, divisions, correctional facilities, successors, administrators, and assigns, including, but not limited to Robert Bannister, James 'Greg' Cox, Eric Fancher, Sheryl Foster, Edward Gibson, Brandt Halling, Tanya Hill, Wesley Mattice, Veronica Meza, John Peery, Gregory Smith, Rashonda Smith, Sue Steward, Stephen Torsky, Ruben Vidaurri, Margaret Whittington, and Brian Williams, Sr., and any other persons named in the Complaint who are or were NDOC employees[.]" (ECF No. 113-3 at 2.)

The agreement contains a "recitals" section that states, in pertinent part:

> C. This Agreement addresses and resolves all disputes arising from and relating to Almy's accusations of retaliation, as well as first and eighth amendment violations. These disputes concern and relate to the alleged constitutional violations as described in *Almy's Civil Rights Complaint* proceeding before the United States District Court for the District of Nevada in the above-entitled matter ("the Complaint").

(ECF No. 113-3 at 2.)

The agreement then contains a section titled "Scope of Agreement," which states:

> A. The scope of this Agreement covers ALL events of the disputes herein described, all persons described, and those events or occurrences complained of in the Complaint of this litigation, the Court's Screening Order, and all subsequent pleadings filed under the instant docket number.

B. The scope of this Agreement also covers all claims, disputes, causes of actions, and controversies *arising from or relating to the disputes and the litigation,* whether or not raised or asserted in the Complaint or other pleadings, and whether or not discovered or known to Almy at the time of the Settlement, which includes any claims arising from the United States Constitution, the Nevada Constitution, federal statutory or administrative law, the Nevada Revised Statutes, and/or common law, and any possible claims related to any injuries sustained as result of the events discussed in the Complaint;

C. Thus, Almy forgoes any legal claims relating to any constitutional violations, and any state tort claims, *as against all named Defendants and potential Defendants, from the inception of his incarceration to the date noted on this Settlement,* as they would relate to the allegations in the Complaint.

(ECF No. 113-3 at 3, emphasis added.)

The next heading in the document is titled "Agreement," and states, in relevant part:

…the NDOC and Almy hereby agree to finally settle all claims, disputes, and controversies, *arising from and relating to all disputes and litigation*, pursuant to the following terms:

…

5. Almy agrees to stipulate to dismiss with prejudice United States District Cour[t] case number. 3:13-cv-00645-MMD-VPC (the instant case) in its entirety, which hereby completely releases and forever discharges the NDOC and its past, present, or future officers, directors, attorneys, employees, divisions, predecessors, and successors in interest, administrators and assigns and all other persons, with whom any of the former have been, are now or may hereafter be affiliated, of and from *any and all liability relating to the disputes and the litigations* <u>and</u> *any and all past, present or future claims*, demands, obligations, actions, causes of action, rights, damages, costs, losses of services, expenses and compensation *of any nature, whatsoever, including, <u>but not limited to,</u> any and all claims arising from or relating to issues or claims arising from the disputes and those claims asserted, or which could have been asserted, in the litigation*.

(ECF No. 113-3 at 4-5, emphasis added.)

**c. The Settlement Agreement Precludes Claims Arising from or Related to the 645 Action through October 6, 2016**

Here, the agreement is clear that it precludes claims arising from or related to the 645 action up to the date Plaintiff signed the settlement agreement—October 6, 2016. Defendants argue that the settlement agreement bars *all* claims that arose from or are related to the 645 case, including those that occurred *after* October 6, 2016. For the reasons set forth below, the court Concludes that the agreement is ambiguous as to whether it would preclude claims that arise from or relate to the 645 action, but came after October 6, 2016. Given that Nevada law states that future claims are not ordinarily precluded, and that ambiguities are to be construed against the drafter, the court finds that the agreement should be construed to preclude only claims arising out of or related to the 645 case litigation for conduct that occurred through October 6, 2016.

Again, the "recitals" portion of the agreement clearly states that the agreement resolves "all disputes arising from and relating to" the alleged constitutional violations described in the complaint in the 645 case. (ECF No. 113-3 at 2.) The "scope of agreement" portion of the agreement states that it covers all events of the disputes described and those events or occurrences in the complaint and subsequent pleadings in the 645 case, as well as "all claims, disputes, causes of action and controversies *arising from or relating to the disputes and the litigation*, whether or not raised or asserted in the Complaint or other pleadings, and whether or not discovered to or known to Almy at the time of the Settlement…and any possible claims related to any injuries sustained as a result of the events discussed in the Complaint." (ECF No. 113-3 at 3, emphasis added.) It goes on to specifically state: "Thus, Almy foregoes "any legal claims" against all named and potential defendants, "*from the inception of his incarceration to the date noted on this Settlement*, as they would relate to the allegations in the Complaint." (*Id.*,

19

emphasis added.) To this point, the agreement is clear that it releases all claims arising from or related to the 645 complaint from the inception of Plaintiff's incarceration through October 6, 2016.

The next section of the settlement agreement, titled "agreement," however, appears to not only release "any and all liability relating to the disputes and the litigations" in the 645 case through October 6, 2016, but *also* any *future* claims arising from or relating to the 645 litigation because it states that Plaintiff agreed to release from liability "relating to the disputes and the litigations and any and all past, present *or future* claims…*of any nature, whatsoever*, *including, **but not limited to*,** any and all claims arising from or relating to issues or claims arising from the disputes and those claims asserted, or which could have been asserted, in the litigation." (ECF No. 113-3, emphasis added.)

The majority of the provisions appear to support a conclusion that the intent of the parties was to only preclude claims arising from or relating to the 645 litigation based on conduct occurring up to October 6, 2016. In other words, the paragraph from the "agreement" portion of the settlement is inconsistent with all of the other provisions. This tends to support a finding that the parties did not intend to preclude claims occurring after October 6, 2016. This conclusion is also supported by statements made in Plaintiff's opposition to the motion. Finally, construing the ambiguity in the agreement against the drafter results in a determination that the agreement only precludes claims arising from or relating to the 645 litigation insofar as they are based on conduct occurring up to October 6, 2016.

Insofar as Plaintiff argues that the release does not extend to all of the defendants named in this case, the agreement is clear that Plaintiff released claims against the defendants named in

the 645 case, as well as their successors and assigns, and potential defendants, that arise from or relate to the disputes and litigation in the 645 case, through October 6, 2016.

### d. The Claims In this Action Arose from or Relate to the 645 Case

The court must determine whether the claims asserted in this case arose from or relate to the 645 litigation.

All of the claims proceeding in this action are based on the allegation that Plaintiff was subject to improper and retaliatory transfers/bed moves beginning on October 28, 2010. He alleges in Count I, that these transfers resulted in the denial of access to the courts because he could not fairly litigate the 129 case; and in Count II, that the transfers/moves were retaliatory for filing grievances and lawsuits; and in Count III, that during the transfers he was restrained for extended periods and could not evacuate his bowels which caused him great pain.

In the 645 case, the screening order noted that Plaintiff's complaint included 37 pages of retaliation allegations in Count I and Plaintiff was allowed to proceed with a retaliation claim based on many of those allegations. (3:13-cv-00645-MMD-VPC, at ECF No. 9.) Those allegations include the following: when he went to file his complaint in the 129 case, he was retaliated against when he was transferred to WSCC; there were numerous acts of harassment and abuse in retaliation due to his exercise of his First Amendment right to seek redress; he was retaliated against when he was placed in segregated confinement related to disciplinary charges at the end of November 2010; on July 28, 2011, he was unwillingly transferred to WSCC from NNCC as part of the continuing effort to retaliate against him for exercise of his First Amendment right to seek redress; he was transferred to NNCC's hospital and while there he filed kites and pleadings and in retaliation he was subject to repeated segregation; he was placed in segregation for 49 days based on false charges which impeded his access to the law library and

to the courts; he mentioned a pattern of evil intent supported by inconsistencies in reports, improper rejection of appeals, and concealing the identity of inmate witnesses; in August 2011, he was transported from WSCC to NNCC and his property was damaged in retaliation for his exercise of his First Amendment rights; from July 28, 2011 to September 14, 2011, he was subject to solitary confinement segregation based on false charges in retaliation for exercise of his First Amendment rights; from August 3, 2011 to September 14, 2011, he was held in segregation at NNCC and subject to harsh conditions; then he was retaliated against when he as transferred to SDCC where he was forced to co-cell with a violent mentally ill inmate from April 5, 2012 to September 22, 2012; the transfer to SDCC was one of seven facility changes and 24 bed moves that he claimed were retaliatory under the tactic of "diesel therapy"; from April 5, 2012 to May 27, 2012, he was celled with an inmate associated with the Aryan Warriors; from May 29, 2012 until June 26, 2012, he was celled with a bipolar inmate who had previously been convicted of possessing a shank; from June 26, 2012 to August 1, 2012, he was celled with another Aryan Warrior, and bipolar inmate; from August 17, 2011 until September 22, 2011, he was celled with an inmate with mental health issues which Plaintiff grieved subjected him to dangerous conditions of confinement; he sent a letter stating that he was being unconstitutionally deprived of reasonable access to the courts at a critical time in his habeas case and civil complaints; he was transferred to LCC on December 6, 2012, and alleged that he suffered in segregation for six months related to disciplinary charges in November of 2012, asserting that segregation imposed extreme impediments to his civil litigation. (3:13-cv-00645-MMD-VPC, ECF No. 10 at 9-47.)

Moreover, the relief sought in the 645 case included a request for an injunction that NDOC's Director and his designees refrain from unnecessarily subjecting Plaintiff to transfer,

22

level reductions, undue segregation, bed moves or other harassment in retaliation for his exercise

of protected conduct, and a declaratory judgment that Plaintiff was subject to undue, repetitious

and retaliatory institutional transfers and bed moves. (ECF No. 10 at 74, 78.)

The transfers and bed moves alleged in the 645 case correlate with many of the dates

cited in this action. Plaintiff also specifically mentioned in the 645 case that he was denied his

access to the courts and inability to litigate; that he was transferred and moved in retaliation for

seeking redress. In addition, he included in filings in the 645 case that that the repeated facility

and bed moves resulted in his being in full restraints for extended periods of time. (2:12-cv-129-

RFB-VCF at ECF No. 112-1.)

Therefore, it is clear that all three counts in this case arose from or relate to the 645 case,

and are precluded by the settlement agreement and stipulated dismissal with prejudice in the 645

case, insofar as they are premised on conduct that occurred up to October 6, 2016. In addition,

the release clearly extended to all current and former NDOC employees up to the time the

settlement agreement was signed. Therefore, summary judgment should be granted in

Defendants' favor as to Counts I, II and III, insofar as they allege conduct occurring up to

October 6, 2016.

The court will now look at each claim to determine whether summary judgment is proper

as to conduct that is alleged to have taken place after October 6, 2016.

**B. Count I**

Count I specifically alleges that Defendants subjected Plaintiff to 45 bed moves/transfers

to prevent him from conferring with inmate or staff witnesses or accessing evidence at the

institution which affected his ability to litigate and try the 129 case. The TAC confronts the

1  actual injury requirement of an access to courts claim, and asserts that the Defendants' conduct

2  rendered all aspects of the trial in the 129 case unfair. (ECF No. 57-1 at 23-25.)

3      The 129 case went to trial in December of 2014, and judgment was entered on December

4  10, 2014. (2:12-cv-129-RFB-VCF, ECF Nos. 438-461.) Therefore, Plaintiff's own pleading in

5  this action confirms that his claim (which is based on the alleged retaliatory transfers) is

6  precluded by the settlement agreement in the 645 case because that conduct took place, by

7  Plaintiff's own admission, well before he signed the settlement agreement. Moreover, the exhibit

8  to the TAC also confirms that the alleged retaliatory transfers and moves took place prior to

9  October 6, 2016. As a result, summary judgment should be granted in Defendants' favor as to

10  Count I in all respects.

11  **C. Count II**

12      Plaintiff was allowed to proceed in Count II with a retaliation claim that the Defendants

13  transferred him and caused him to move beds 45 times, beginning in October of 2010, in

14  retaliation for filing grievances and lawsuits.

15      The court is now only concerned with alleged retaliatory conduct that occurred after

16  October 6, 2016, when he signed the settlement agreement in the 645 case.

17      Defendants have produced evidence that between October 6, 2016, and when he filed this

18  action on August 7, 2017, Plaintiff was housed only at NNCC and was not transferred. (ECF No.

19  113-4 at 2.) He was moved to a different cell twice between October 6, 2016 and August 7, 2017.

20  (ECF No. 113-7 at 3.) They contend this is hardly excessive.

21      Plaintiff does not submit evidence to refute that he only had two bed changes and no

22  transfers between October 6, 2016 and August 7, 2017. Moreover, the complaint does not make

23  any assertion that these two bed moves while at NNCC were retaliatory. Instead, the last transfer

mentioned in his exhibit that he claims was retaliatory was on October 3, 2016, when he was moved to NNCC. (ECF No. 57-1 at 33.) All retaliation claims related to transfers and bed moves to that point are precluded by the settlement agreement in the 645 case. Moreover, if Plaintiff believed that the two bed moves, on June 30, 2017, and July 10, 2017, were retaliatory, he could have alleged as much in the TAC, which was filed September 18, 2017. Therefore, the court finds that summary judgment should be granted in favor of Defendants as to Count II in all respects.

**D. Count III**

Plaintiff was allowed to proceed in Count III with an Eighth Amendment conditions of confinement claim based on allegations that when he was subject to the alleged retaliatory transfers, he was forced to wear full restraints, for 8-12 hours straight, which did not allow him the ability to evacuate his bowels and caused him great pain.

The court is only addressing this claim insofar as it relates to conduct that occurred after October 6, 2016. Again, Defendants have produced evidence that between October 6, 2016 and August 7, 2017 (when he filed this action), Plaintiff was housed at NNCC and was never transferred to another institution. (Ex 4 at 1). Plaintiff does not present any evidence to refute this evidence. In fact, the exhibit attached to the TAC reflects that he was moved to NNCC on October 3, 2016, and does not reflect any further moves. (ECF No. 57-1 at 33.) There is no evidence that Defendants could have violated Plaintiff's Eighth Amendment rights by putting him in full restraints during a transfer because the undisputed evidence is that he was not transferred after October 3, 2016. Therefore, summary judgment should be granted in Defendants' favor as to Count III in all respects.

In light of these conclusions, the court need not reach Defendants' remaining arguments.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' Motion for Summary Judgment (ECF No. 113).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: December 5, 2019

_William G. Cobb_
William G. Cobb
United States Magistrate Judge

26